CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED for
Rks
MAR 0 9 2006
JOHN F. CORCORAN, CLERK
BY: HMcDonald
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| **DONALD ROBERT PILCHER,** | ) | |
| Petitioner, | ) | **Civil Action No. 7:05CV00688** |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| **GENE M. JOHNSON,** | ) | **By: Hon. Jackson L. Kiser** |
| Respondents. | ) | **Senior United States District Judge** |

Donald Robert Pilcher, a Virginia inmate proceeding pro se, filed this action as a petition

for writ of habeas corpus, pursuant to 28 U.S.C. § 2254. The petitioner challenges the validity of

his convictions in the Circuit Court for the County of Roanoke. The petition is presently before

the court on the respondent's motion to dismiss.[1] For the reasons set forth below, the court will

grant the respondent's motion.

## BACKGROUND

On May 23, 2001, the petitioner was convicted of three counts of incest involving his

daughter Donna.[2] The petitioner was subsequently sentenced to a total term of imprisonment of

thirty years.

The petitioner appealed the convictions to the Court of Appeals of Virginia. The

petitioner raised the following issues on direct appeal:

1. Could the indictments be amended from charging incest by fornication to incest by adultery?

---

[1] In response to the respondent's motion, the petitioner emphasizes that the motion is not signed by the respondent's attorney. However, the motion was filed electronically. Pursuant to the Standing Order entered on February 2, 2004, "[t]he electronic filing of a petition, pleading, motion, or other paper by an attorney who is a registered participant in the court's [electronic filing] system shall constitute the signature of that attorney under Federal Rule of Civil Procedure 11 and for all other purposes."

[2] The sexual acts allegedly occurred between June of 1969 and March of 1970. Donna did not tell anyone about the petitioner's conduct until after her mother died in August of 1999.

2. Under the facts of this case, is the requirement of a bifurcated trial an <u>ex post facto</u> law?

3. Under the circumstances of this case, is the rape shield law an <u>ex post facto</u> law?

4. Should the statement given by Pilcher to the detective be suppressed for failure to give a <u>Miranda</u> warning?

5. Did the lapse of time between the offenses and prosecutions result in a lack of due process of law?

6. Should a preliminary hearing have been held?

On April 5, 2002, a single judge on the Court of Appeals denied the petition. However, on September 30, 2002, a three-judge panel awarded an appeal on the two <u>ex post facto</u> issues. The petitioner's convictions were subsequently affirmed on July 15, 2003. The petitioner then filed a petition for appeal in the Supreme Court of Virginia. On December 17, 2003, the petition for appeal was refused.

On April 24, 2002, while the petitioner's appeal was pending in the Court of Appeals of Virginia, the petitioner filed a <u>pro se</u> petition for writ of habeas corpus in the Supreme Court of Virginia. The petition included claims involving his daughter Donna's case, as well as a similar case involving his daughter Peggy. The claims were as follows:

1. The police obtained a statement from him in violation of his <u>Miranda</u> rights.

2. The Commonwealth's Attorney did not disclose a police report and wrongly sought indictments for fornication under Virginia Code § 18.2-344.

3. The trial judge denied him a preliminary hearing, allowed the indictments to be amended, and applied the rape shield law to bar evidence regarding the complainant's prior sexual history.

4. His trial attorneys were ineffective because they did not obtain evidence that would have refuted the claim of his daughter Peggy that she had reported to a counselor in 1978 that her father had sexually abused her.

2

5.      His trial attorneys did not have Pilcher take a lie detector test or any psychological tests that would have shown he was not guilty of the charges.

6.      His trial attorneys did not defend the case aggressively.

7.      One of his trial attorneys violated client confidentiality by discussing the case with other people.

8.      His trial attorneys cited the wrong sections of the Virginia Code in the petition for appeal.

9.      His trial attorneys did not move for a new trial based on a discrepancy between the police report and Peggy's trial testimony concerning the year an offense against her had occurred.

On July 10, 2002, the petitioner asked to have the habeas petition withdrawn. On July 22, 2002, the Supreme Court entered an order stating that the petition was "dismissed/withdrawn without prejudice to petitioner's right to file a subsequent habeas corpus petition, limited to the ground or grounds assigned in the present petition and limited to the requirements of § 8.01-654(A)(2)."

On September 15, 2004, the petitioner filed a second habeas petition in the Supreme Court of Virginia. The petitioner raised the same claims that are included in the instant petition, with the exception of claims T(1), (2), (4) and (5).[3] The Supreme Court dismissed the petition on June 22, 2005. The Court concluded that the claims were either procedurally barred by Virginia Code § 8.01-654(B)(2) or without merit. On September 23, 2005, the Supreme Court denied the petitioner's request for rehearing.

The petitioner executed the instant petition on October 24, 2005. The petition includes the following claims:

A.      The petitioner's trial attorneys were ineffective for the following reasons:

---

[3]The allegations presented in claims T(1), (2), (4), and (5) were raised on direct appeal.

3

(1)    They failed to show the complainant was biased and prejudiced against the petitioner and that the charges were fabricated.

(2)    They did not argue that no direct indictments were allowed under Virginia Code § 16.1-158(8).

(3)    They did not argue that the rape shield statute was an ex post facto law.

(4)    They were inexperienced in sexual abuse cases.

(5)    They did not argue that the joinder of charges was unlawful.

(6)    They failed to argued that the petitioner could not be tried in circuit court until he had a probable cause hearing in juvenile court.

(7)    They did not argue that the convictions were null and void because the charges were not properly certified from the juvenile court.

(8)    They did not argue that the incest statute was facially unconstitutional because it was devoid of any element of mens rea.

(9)    They failed to suppress the petitioner's statements to the police.

(10)    They did not argue that the petitioner was unlawfully sentenced to a term of years for a misdemeanor offense.

(11)    They did not request a cautionary jury instruction on accomplice testimony because the complainant confessed to participating in criminal acts.

(12)    They did not request a cautionary jury instruction based on the fact that the complainant's testimony was not corroborated by physical evidence.

(13)    They did not argue that the circuit court had no jurisdiction under Virginia Code § 16.1-158.

(14)    They did not argue that the indictments were null and void under Virginia Code § 16.1-158.

(15)    They did not request a jury instruction on the complainant's credibility.

(16)    They did not argue that the complainant was not a credible witness.

(17)    They failed to object to references regarding "other crimes" committed by the petitioner.

4

(18)     They commented on inadmissible "other crimes."

(19)     They referenced the petitioner's statement to the police as a "confession."

(20)     They did not move for a mistrial when the complainant said the sexual abuse started when she was 12 years old and living in Illinois.

(21)     They did not argue that the delay in making the complaint was against usual human conduct.

(22)     They cited to the wrong statute in a motion filed on February 13, 2001.

(23)     They did not use FOIA to get the police report to use in impeaching the complainant.

(24)     They did not argue that applying the rape shield law violated due process.

(25)     They did not argue that the rape shield law had no application in his case.

(26)     They failed to argue that the charges lacked mens rea.

(27)     They did not argue that jury instructions 6, 7, and 8 lacked the necessary element of mens rea.

(28)     They did not argue that jury instructions 6, 7, and 8 improperly stated that the sexual abuse was "voluntary."

(29)     They did not argue that jury instructions 6, 7, and 9 were improperly worded.

(30)     They failed to request a jury instruction on the defendant's presumption of innocence.

(31)     They failed to request an accomplice jury instruction based on the fact that the complainant consented to the acts of sexual intercourse.

(32)     They failed to request a jury instruction regarding the delay in making the charges.

(33)     They failed to request a jury instruction concerning the plaintiff's motive in making the charges.

(34)     They failed to move to set aside the verdict for lack of jurisdiction under Virginia Code § 16.1-158(8).

5

(35)   They failed to move to set aside the verdict based on a variance of proof as set forth in jury instructions 6, 7, and 8.

B.   The petitioner's appellate attorneys rendered ineffective assistance in representing the petitioner in the Court of Appeals of Virginia for the following reasons:

(1)   They did not argue that the Commonwealth's evidence failed to prove a crime under Virginia Code § 18.1-191.

(2)   They did not argue that the charges were null and void because the trial court lacked jurisdiction.

(3)   They did not argue that the jury verdict was wrong and lacked supporting evidence because there was no basis for the jury to believe the complainant.

(4)   They did not argue that jury instructions 6, 7, and 8 fatally varied from the evidence.

(5)   They did not assert that the petitioner's right under Virginia Code § 8.01-680 to have the appellate court review the jury's conclusion for reasonableness.

(6)   They relied on the wrong section of the Virginia Code to argue that a preliminary hearing was required.

(7)   They improperly argued the delay/due process claim.

(8)   They should have argued that the charges were illegal instead of arguing the Miranda issue.

(9)   Their argument regarding not amending the indictments was not supported by applicable law.

(10)   They did not argue that the rape shield law did not apply to the case.

(11)   They did not argue that the Court of Appeals could use the ends of justice exception to find the petitioner innocent of any crime under Virginia Code § 18.1-191.

(12)   They did not argue that the Court of Appeals could use the ends of justice exception to find a due process violation under Virginia Code § 16.1-158(8).

6

(13)  They did not argue that the Court of Appeals could use the ends of justice exception to reach the claim of a fatal variance between the indictments, jury instructions 6, 7, and 8, and the proof.

(14)  They did not argue that the Court of Appeals could use Virginia Code § 8.01-680 to review the verdict.

C.  The petitioner's appellate attorneys rendered ineffective assistance in representing the petitioner in the Supreme Court of Virginia for the following reasons:

(1)  They did not argue that the Commonwealth's evidence failed to prove a crime under § 18.1-191.

(2)  They did not argue that the charges were null and void because the trial court lacked jurisdiction.

(3)  They did not argue that the jury verdict was wrong and lacked supporting evidence because there was no basis for the jury to believe the complainant.

(4)  They did not argue that jury instructions 6, 7, and 8 fatally varied from the evidence.

(5)  They did not assert that the petitioner's right under Virginia Code § 8.01-680 to have the appellate court review the jury's conclusion for reasonableness.

(6)  They relied on the wrong section of the Virginia Code to argue that a preliminary hearing was required.

(7)  They improperly argued the delay/due process claim.

(8)  Their due process argument concerning the Miranda issue was "a waste of time and effort."

(9)  They failed to argue that the petitioner was convicted of offenses for which he was not charged.

(10)  They did not properly argue the rape shield, bifurcated trial, and ex post facto issues.

(11)  They did not argue that the Court of Appeals erred in applying the rape shield law to the case.

7

(12)   They did not argue that the Supreme Court could use the ends of justice exception to find a due process violation under Virginia Code § 16.1-158(8).

(13)   They did not argue that the Supreme Court could use the ends of justice exception to find the petitioner innocent of any crime under Virginia Code § 16.1-158(8).

(14)   They did not argue that the Supreme Court could use the ends of justice exception to reach the claim of a fatal variance between the indictments, jury instructions 6, 7, and 8, and the proof.

(15)   They did not argue that the Supreme Court could use Virginia Code § 8.01-680 to review the verdict.

D.   The petitioner's trial attorneys failed to argue that the indictments did not contain any element of <u>mens rea</u>.

E.   The petitioner's trial attorneys failed to argue that jury instructions 6, 7, and 8 did not contain any elements of <u>mens rea</u> with regard to Virginia Code § 18.1-191.

F.   The trial court violated the petitioner's due process rights by assuming jurisdiction over the charges that were made under Virginia Code § 18.1-191, in disregard of § 16.1-158(8), which called for a preliminary hearing in juvenile court.

G.   His trial attorneys failed to move to strike the evidence after the complainant negated the "voluntary" element of the offense by saying that she was forced to have sex with the petitioner.

H.   His trial attorneys failed to move to set aside the verdict.

I.   His trial attorneys did not make proper arguments regarding amending the indictments.

J.   His trial attorneys did not object to jury instructions 6, 7, and 8.

K.   His trial attorneys did not object within 21 days to the fact that the petitioner was charged with adultery but convicted of incest.

L.   His attorneys did not argue in the Court of Appeals that he suffered a miscarriage of justice by being convicted of uncharged crimes.

M.   His attorneys did not argue in the Supreme Court that the petitioner suffered a miscarriage of justice by being convicted of uncharged crimes.

8

N.  The trial court lacked jurisdiction over the amended indictments because they charged time-barred misdemeanor crimes.

O.  The trial court lacked jurisdiction over the original charges.

P.  His trial attorneys argued that § 16.1-241(J) applied instead of arguing that the charges were time-barred.

Q.  His trial attorneys erred by failing to file a motion to quash the indictments, which wrongfully charged a felony instead of a misdemeanor.

R.  His trial attorneys did not argue that jury instruction 5 was improper.

S.  His trial attorneys did not argue that the use of the petitioner's statement to the police was prosecutorial misconduct, because nothing in the statement related to the charges.

T.  (1)  The indictment could not be amended from charging incest by fornication to charging incest by adultery.

(2)  The rape shield law and the bifurcation of trial are ex post facto laws under the facts of the petitioner's case.

(3)  His appellate attorneys were ineffective for arguing that his statement to detectives should have been suppressed, because there was no legal basis for a Miranda claim.

(4)  The lapse of time between the offenses and the prosecution resulted in a lack of due process of law.

(5)  A preliminary hearing was required in the criminal case.

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 2254(b), a petitioner challenging a state court conviction must first exhaust remedies available in the courts of the state in which she was convicted before seeking federal habeas review. See Preiser v. Rodriguez, 411 U.S. 475 (1973). When a claim has been adjudicated on the merits by a state court, this court may grant habeas relief only if the state court's adjudication of the claims "was contrary to, or involved an unreasonable application of, clearly established [f]ederal law," or "was based on an unreasonable determination of the

9

facts." 28 U.S.C. § 2254(d). The United States Supreme Court has explained that this statute "plainly sought to ensure a level of 'deference to the determinations of state courts,' provided those determinations did not conflict with federal law or apply federal law in an unreasonable way." Williams v. Taylor, 529 U.S. 362, 386 (2000) (internal citations omitted). Consequently, "state-court judgments must be upheld unless, after the closest examination of the state-court judgment, a federal court is firmly convinced that a federal constitutional right has been violated." Id. at 389.

## DISCUSSION

A.    Procedurally Defaulted Claims

The petitioner previously raised claims A(1) - (35), D, E, G, H, I, J, K, N, O, P, Q, R, and S in the second habeas petition filed in the Supreme Court of Virginia. The Supreme Court of Virginia concluded that these claims were barred by Virginia Code § 8.01-654(B)(2)[4]. The United States Court of Appeals for the Fourth Circuit has repeatedly held that the procedural default rule set forth in § 8.01-654(B)(2) constitutes an adequate and independent state ground for the denial of habeas relief. See Mackall v. Angelone, 131 F.3d 442, 445 (4th Cir. 1997) (citing Pope v. Netherland, 113 F.3d 1364, 1372 (4th Cir. 1997); Gray v. Netherland, 99 F.3d 158, 163 (4th Cir. 1996)). As a result, this court may not review the claims unless the petitioner demonstrates "cause for, and resulting prejudice from, the default or that he has suffered a fundamental miscarriage of justice." Fisher v. Angelone, 163 F.3d 835, 852 (4th Cir. 1998). Because the petitioner has not made either showing, claims A(1)-(35), D, E, G, H, I, J, K, N, O, P, Q, R, and S must be dismissed.

_____

[4] Section 8.01-654(B)(2) provides, in pertinent part, that "[n]o writ shall be granted on the basis of any allegation the facts of which petitioner had knowledge at the time of filing any previous petition." Va. Code § 8.01-654(B)(2).

10

B.    Exhausted Claims

1.    Claims B(1)-(14), C(1)-(15), L, M, and T(3)

In claims B(1)-(14), C(1)-(15), L, M, and T(3), the petitioner contends that his appellate

attorneys were ineffective for either failing to raise certain arguments on appeal, or for choosing

to raise certain arguments.  A criminal defendant's right to effective assistance of counsel is

protected by the Sixth Amendment to the United States Constitution.  In Strickland v.

Washington, 466 U.S. 668, 669 (1984), the United States Supreme Court set forth a two-prong

test for evaluating ineffective assistance claims.  The defendant must show that his counsel's

performance fell "below an objective standard of reasonableness," and that the "deficient

performance" must have "prejudiced the defense."  Id. at 687-688.  The prejudice prong

"generally requires the defendant to demonstrate by a reasonable probability that, but for

counsel's error, the result of the proceeding would have been different."  Frazer v. South

Carolina, 430 F.3d 696, 703 (4th Cir. 2005).

The Supreme Court of Virginia concluded that these claims failed to satisfy the

Strickland test.  The Supreme Court explained that the selection of issues to raise on appeal is

left to the discretion of counsel, and that counsel need not raise every possible issue on appeal.

Having reviewed the record, I conclude that the Supreme Court's decision did not involve an

unreasonable application of clearly established federal law or an unreasonable application of the

facts.  When applying the Strickland test to claims of ineffective assistance of counsel on appeal,

reviewing courts must accord appellate attorneys the "presumption that [they] decided which

issues were most likely to afford relief on appeal."  Pruett v. Thompson, 996 F.2d 1560, 1568

(4th Cir. 1993).  The United States Supreme Court has explained that "the process of 'winnowing

out weaker claims on appeal and focusing on' those more likely to prevail, far from being

11

evidence of incompetence, is the hallmark of effective appellate advocacy." Burger v. Kemp, 483 U.S. 776, 784 (1987) (internal citations omitted). In this case, the petitioner has failed to show that his appellate attorneys' selection of issues was deficient, or that he suffered any resulting prejudice. While the petitioner may speculate that his appellate proceedings would have ended differently if certain arguments had been made, mere speculation is insufficient to establish a claim under Strickland. See Booth-El v. Nuth, 288 F.3d 571, 584 (4th Cir. 2002). Accordingly, claims B(1)-(14), C(1)-(15), L, M, and T(3) must be dismissed.

### 2.     Claims F and T(5)

In claims F and T(5), the petitioner alleges that the trial court erred by failing to hold a preliminary hearing in juvenile court. The petitioner contends that a preliminary hearing was required by Virginia Code § 16.1-158(8), which was in effect at the time of the alleged incidents. The same argument was raised at trial and on direct appeal.[5] The Court of Appeals of Virginia concluded that the argument was precluded by the Supreme Court of Virginia's decision in Payne v. Warden of Powhatan Correctional Center, 223 Va. 180, 285 S.E.2d 886 (Va. 1982). In Payne, the Supreme Court held that "where an adult accused is directly indicted by a grand jury, without having been previously arrested and charged, the jurisdiction of the circuit court is thereby invoked, and no preliminary hearing is required, even though the victim of the crime involved may be a juvenile." Payne, 223 Va. at 184, 285 S.E.2d at 888. The ruling of the Court of Appeals was affirmed by the Supreme Court of Virginia. See Saunders v. Reynolds, 214 Va. 697, 700-701, 204 S.E.2d 421, 424 (Va. 1974) (the denial of a petition for appeal is a decision on the merits of a case).

---

[5]The claim was also raised in the petitioner's state habeas petition. The Supreme Court of Virginia dismissed the claim under Henry v. Warden, 265 Va. 246, 249, 576 S.E.2d 495, 496 (Va. 2003), because it had been raised and decided in the trial court and on direct appeal.

12

"It is black letter law that a federal court may grant habeas relief 'only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States.'" Wright v. Angelone, 151 F.3d 151, 157 (4th Cir. 1998) (quoting 28 U.S.C. § 2254(a)). See also Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (emphasizing that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). Because claims F and T(5) rest solely upon an interpretation of state statutes and case law, they are simply not cognizable on federal habeas review.[6] See Wright, 151 F.3d at 157 (refusing to entertain a claim that the circuit court lacked jurisdiction over two counts in an indictment that were never presented in the juvenile court, since the claim rested solely on state law). Therefore, claims F and T(5) must be dismissed.

### 3.    Claim T(1)

In claim T(1), the petitioner alleges that the trial court erred by allowing the indictments, which originally charged incest by fornication, to be amended to charge incest by adultery or fornication. The issue was raised at trial and on direct appeal. The Court of Appeals of Virginia held that the trial court did not err or prejudice the petitioner by permitting the Commonwealth to amend the indictments, since the amendment did not change the nature and character of the offense, and since the trial court continued the case after the amendment was granted, so that the petitioner could conform his defense to the alternative allegation. The ruling of the Court of Appeals was affirmed by the Supreme Court of Virginia. See Saunders v. Reynolds, 214 Va. at 700-701, 204 S.E.2d at 424.

---

[6]Even if claims F and T(5) were cognizable on federal habeas review, they would still fail, as the petitioner has not shown that the decision of the state appellate courts involved an unreasonable application of clearly established federal law or an unreasonable determination of the facts.

Case 7:05-cv-00688-JLK-mfu   Document 10   Filed 03/09/06   Page 13 of 15   Pageid#: 253

Having reviewed the record, I conclude that the state appellate courts' decision did not involve an unreasonable application of clearly established federal law or an unreasonable determination of the facts. Accordingly, claim T(1) must be dismissed.

4.    Claim T(2)

In claim T(2), the petitioner claims that the rape shield statute, Virginia Code § 18.2-67.7, and the bifurcated trial statute, Virginia Code § 19.2-295.1, were ex post facto laws as applied in his criminal case. The petitioner raised the same claim at trial and on direct appeal. The Court of Appeals of Virginia held that the challenged statutes were not ex post facto laws, because they did not affect the petitioner's substantive rights. The ruling of the Court of Appeals was affirmed by the Supreme Court of Virginia. See Saunders v. Reynolds, 214 Va. at 700-701, 204 S.E.2d at 424.

Having reviewed the record, I conclude that the appellate courts' decision did not involve an unreasonable application of federal law or an unreasonable determination of the facts. See Miller v. Florida, 482 U.S. 423, 433 (1987) ("[N]o ex post facto violation occurs if the change in the law is merely procedural and does 'not increase the punishment, nor change the ingredients of the offense or the ultimate facts necessary to establish guilt.'") (quoting Hopt v. Utah, 110 U.S. 574, 590 (1984)). Therefore, claim T(2) must be dismissed.

5.    Claim T(4)

In claim T(4), the petitioner alleges that the lapse of time between the alleged offenses and the prosecution violated his due process rights. The petitioner raised this issue at trial and on direct appeal. The Court of Appeals of Virginia concluded that the claim was without merit, because there is no statute of limitations for felony offenses, the delay was not attributable to the government, and the petitioner demonstrated no actual prejudice from the delay. The ruling of

14

the Court of Appeals was affirmed by the Supreme Court of Virginia. See Saunders v. Reynolds, 214 Va. at 700-701, 204 S.E.2d at 424.

Having reviewed the record, I conclude that the appellate courts' decision did not involve an unreasonable application of federal law or an unreasonable determination of the facts. See Jones v. Angelone, 94 F.3d 900, 909, 911 (4th Cir. 1996) (dismissing the petitioner's claim that the delay between the commission of the alleged crimes and his arrest violated due process where he failed to show that he suffered actual prejudice from the delay, or "that the delay violated fundamental conceptions of justice or the community's sense of fair play and decency.") Accordingly, claim T(4) must be dismissed.

## CONCLUSION

For the reasons stated, I will grant the respondent's motion to dismiss. The Clerk is directed to send certified copies of this opinion and the accompanying order to the petitioner and counsel of record for the respondent.

ENTER: This 9th day of March, 2006.

Senior United States District Judge

15